**STATE, Plaintiff-Appellee, v. ACRI, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3212.   Decided May 24, 1948.

Wm. A. Ambrose, Pros. Atty., Harold H. Hull, Asst. Pros. Atty., Youngstown, for plaintiff-appellee.

W. P. Barnum, Rollin Hahn, Sidney Rigelhaupt, Youngstown, for defendant-appellant.

## OPINION

By SKEEL, J.

This appeal comes to this court on questions of law from a judgment in the common pleas court of Mahoning County of guilty of murder in the second degree.

The defendant was indicted by the grand jury of Mahoning County on the charge of murder in the second degree, to which charge he entered a plea of "not guilty by reason of insanity." Upon trial, the state produced evidence which tended to establish that the defendant on the 17th day of February, 1947, was in his tavern located on Oak Street. Shortly after 9:00 P. M., on that day, two friends of long standing, Oravic and Vrabel, came into the tavern, and after speaking to defendant who was behind the bar, took seats at the end of the bar

and ordered drinks from the bar-tender. About one half hour after Oravic and Vrabel had seated themselves at the bar, the defendant noticed Oravic inserting and withdrawing a cigar into a whisky glass and the defendant was then said to have noticed a sneer on Oravic's face. He thereupon stepped forward toward Oravic, reached under the bar for his revolver and said to Oravic "you asked for it" or "you asked for it Johnie" and fired twice at the deceased. Oravic jumped up and started for the door and the defendant came out from behind the bar and shot once more at Oravic, who, upon reaching the sidewalk, fell to the ground.

He died within a very short time after falling to the sidewalk.

Vrabel started to follow Oravic out, but the defendant turned and grabbed him by the collar, held the gun in his face and said "talk, talk fast, you hunkie bastard, talk fast." With that Vrabel tripped over something and fell and the defendant pulled the trigger of the revolver twice, pointing it directly at Vrabel's head, but the cartridges did not explode. After threatening to hit Vrabel with the gun he grabbed his coat, "told the bartender about calling the police and that he was shooting it out" ran outside, got into his automobile and drove away.

The police arrested the defendant about two hours later. They found him in the kitchen at his mother's home, holding his head in his hands. The policeman who made the arrest testified that he was calm but seemed to be "dazed." The revolver was found in his topcoat pocket. The county coroner saw him about three hours after his arrest and reported him to be in a dazed condition and said he did not remember shooting anybody.

The errors of which the defendant complains are:

(1) The refusal of the court to exclude the evidence of Dr. R. E. Bushong, called as an expert witness by the state, to testify as to his opinion as to whether or not the defendant was sane or insane at the time the defendant shot and killed Oravic, it being claimed by defendant that Dr. Bushong based his conclusions not only on the facts contained in the hypothetical question but also upon facts contained in a report sent to him by the prosecutor in a letter seeking to employ his services in the case and upon information received from Dr. Robt. E. Olson who was also an expert witness called by the state.

2. In withholding evidence from the injury that had been received in the trial of the case.

3. Error in the reception of evidence for the purpose of establishing motive.

As to the last of these claims, Vrabel, the companion of deceased, after testifying he knew of nothing before the killing that would motivate defendant's acts, testified as follows:

"Q. As to any trouble between Mike Acri and Oravic, did you ever hear or learn in any way of any trouble after the killing?
(objection)
(overruled) (after some argument)
A. I heard rumors, found out things afterwards."

The court thereafter precluded any further inquiry on this subject because the evidence would be hearsay at best. The refusal of the court to strike the witness's statement that he heard 'rumors' without more, did not constitute prejudicial error.

The defendant's first claim of error is founded upon refusal of the court to exclude the testimony of the state's expert witness, Dr. R. E. Bushong. The doctor had been asked a hypothetical question seeking his opinion as to the sanity or insanity of the defendant at the time he killed Oravic. The hypothetical question detailed completely the medical history of the defendant from the time he was sixteen years old, when he was a patient of the Cleveland Clinic for a nervous disorder where, upon diagnosis, he was found to be suffering from "neuro-circulatory asthenia or a disturbance" and continuing through the numerous times he was subsequently a patient either at Cleveland Clinic or the Mayo Clinic at Rochester, Minnesota, The Miller Hospital at St. Paul, Minnesota, and another hospital known as Mounds Park Memorial Hospital, including the clinical diagnosis of his mental and nervous condition on these several visits. The question also detailed his business accomplishments and domestic tribulations up and until February 17, 1947, and describing his conduct just prior to, at the time of, and subsequent to the killing of Oravic. The witness was asked to express his opinion as to the sanity or insanity of the defendant, basing his opinion upon the facts contained in the hypothetical question. The record upon this question is as follows:

"Q. * * * Now, then, doctor, from your experience and from the facts I have given you, as revealed by the hospital records, so far as I have gone into them, the facts leading up to and immediately surrounding the shooting as I have related them to you, do you think you have the means of forming an

opinion and expressing one satisfactory to yourself as to the mental condition of this defendant at the time of the shooting, to-wit, February 17th last?

Mr. Hahn: I object.

Court: On the same ground as already made?

Mr. Hahn: Yes

Court: Overruled

Mr Hahn: Exception

Q. Yes, or, no, doctor?

A. I had for a number of years — — —

Court: Just a moment sir; he is asking you the plain question, if you feel you can give an opinion satisfactory to yourself?

Q. He may want to elaborate; can you, from the facts I have given you of the history there embraced in these records and the facts leading up to the shooting and surroundings immediately surrounding the actual shooting, do you have an opinion?

A. I have.

Q. As to his mental condition at that time?

A. I have.

Q. Now, what was his mental condition at that time, doctor, sane or insane.

A. Let me put it this way; this man had been suffering—

Judge Barnum: Kindly keep your voice up.

A. —had been suffering with a neurosis over a period of years, with remissions and exacerbations, but in my opinion he had been clear for some time prior to the commission of the crime and it is my opinion he was sane at that time.

Q. He was sane at the time of the shooting?

A. Yes, sir."

The record also discloses that prior to the time when Dr. Bushong examined the defendant, the prosecutor of Mahoning County, wrote him a letter in which he stated:

"* * * In the hope and belief that the medical and fact history of the case will be of some benefit to you in your examination, I am enclosing you herewith this information * * *."

Upon cross-examination the witness testified as follows:

"Q. Now, if I understand your statement correctly, and if I am not correct please to put me right, you base your opinion in this case upon all the facts contained in Mr. Ambrose's hypothetical question, that is true?

A. That is right.

Q. You have taken into consideration ·and as a part of the basis of your opinion what you learned in talking to and examining Mike Acri at Massillon?

A. Yes sir.

Q. You also take into consideration, as a part of the basis of your opinion, the information furnished to you by the prosecutor before the Acri examination?

A. Yes, sir.

Q. Is that true?

A. Yes, sir.

Q. So that, let me repeat,—your conclusion and your expert opinion as given here, in this case, is based and bottomed substantially to a substantial degree, upon the hypothetical question, second, upon what you learned in the examination of Acri at Massillon the other day, and upon the information furnished you by the prosecutor before you went to the examination?

(Mr. Ambrose) I object to that.

Court: Wait, he is re-phrasing the question he asked a moment ago.

(Mr. Ambrose) He is bottoming it upon three possible situations.

(Judge Barnum) If your honor, please, I am trying to be short and I don't want any interruptions.

Court: Overruled.

A. It is based on the history of the case and the examination of the individual.

Q. I am trying to make my question as simple as possible; your opinion is based in part upon all the facts of the hypothetical question given to you by the prosecutor here in open court?

A. Yes, sir.

Q. It is based in part upon what you learned in your examination of Acri in connection with Dr. Hyde?

A. Yes, sir.

Q. And it is based in part upon the information furnished to you by the prosecutor in writing, before your examination at Massillon?

A. Yes, sir.

Judge Barnum: Now, if your Honor, please, I move that the conclusion and expert opinion as given by the witness be stricken and the jury instructed to entirely disregard his opinion as expressed by this witness."

The court overruled the motion to exclude the testimony of Dr. Bushong on the ground that it in part was founded on

facts other than those contained in the hypothetical question and those developed by the examination made by defendant of the witness.

After some discussion, the witness' again testified on this subject:

"Q. Why did you tell us a little bit ago that your opinion as expressed here today in court, was bottomed in part upon the fact history given by the prosecutor?

A. I say it was in part.

Q. What?

A. I say it was in part.

Q. Then you agree with me?

A. Those facts were included in the history I obtained from several sources.

Q. You spoke of several sources?

A. Yes.

Q. We will take those up; you agree with me, do you not, that your judgment and opinion, as expressed in court today, are based and bottomed in part upon the medical and fact history as sent by the prosecutor?

A. Yes, but they weren't formed on the basis of what he gave me at that time.

Q. They were what?

A. 1 didn't form the opinion upon the basis of facts he gave me in that letter.

Q. Now, but the opinion you gave to the jury today, is based in part on what Mr. Ambrose sent to you?

A. In part, all the facts he gave me, which I also obtained from other sources, constitute the history, and I based my opinion largely on that.

Q. You just got through volunteering the information that you got your facts from several sources; where did you get any facts or claimed facts other than from the prosecutor in his letter that I just read,—your examination with Dr. Hyde and the facts embraced within the hypothetical question Mr. Ambrose put to you a few minutes ago? What other source did you have for facts?

A. From the defendant himself.

Q. That would be facts gained in the examination with Dr. Hyde?

A. Yes, that would make up the history of the night of the shooting.

Q. Was there any other source of facts?

A. Prior to the examination or at the time of the examination?

Q. Up until you went on the stand today.

Court: He means was there any other source other than the defendant himself, what the prosecutor sent you and the hypothetical question.

A. Yes, I talked with Dr. Olson and he gave me some facts.

Q. And in your conversation with Dr. Olson you were advised that he also had examined the defendant?

A. I was.

Q. And you discussed with Dr. Olson what facts he had found in his examination?

A. That is right.

Q. And you used that as a part of your judgment and opinion as expressed here today?

A. That would enter into it.

Judge Barnum: Again, I renew my motion.

Court: The jury will retire, please, to the jury room."

After the jury retired to the jury room, the question of the contents of the letter from the prosecutor to the witness was presented to the court, the state contending that the hypothetical question included every assumption of fact that was contained in the letter. When the jury was recalled, Dr. Bushong gave the following evidence:

"Q. I wish you would please tell the court and jury whether or not you reached your conclusion as to the defendant's insanity at the time of the commission of the crime, upon the hypothetical facts embraced in my hypothetical question to you, plus the facts you obtained from defendant, plus the benefit you derived from the opportunity you had to observe him, did you base your opinion on those facts and those facts alone, or did you base your opinion on something independent of the facts that I gave you, outside of the facts I gave you in court in the hypothetical question?

A. I based my opinion on the facts, the data I got in court.

Q. Did you in any of the correspondence I had with you, receive any facts from me different than the facts I gave you in court here?

A. No sir.

Judge Barnum: I object to that and ask it be stricken out.

Court: Doctor, I will excuse you from the stand and will you please go to your papers and bring into court the data which is referred to in that letter read to you a while ago and sent you by the prosecutor?

(Witness) Yes, sir.

Court: I take it your objection was based on the best evidence rule?

Judge Barnum: Yes.

Court: That is why I am sending for the best evidence. (Doctor leaves the stand and returns with certain documents which he hands to the court)

Court: Doctor, you have handed me three papers, three pages entitled "State of Ohio vs Mike Acri, history of the case," and you also handed me your letter received by you from the prosecuting attorney of this county under date of October 28, 1947. The three papers which were attached to that letter and which I hold in my hand, is that the data you received and the only data you received from the prosecuting attorney in connection with this case?

Witness: Yes, sir.

Court: Thank you. I am going to ask you to leave these papers with the court when you leave. In view of the doctor's answers to the court's questions I will be very glad to substitute them for his answers to those questions to which you objected.

Judge Barnum: I am not requesting anything.

Court: You made an objection to a question and answer, after it was made and answered, and I am still going to entertain your objection. I will take the matter under advisement. Is there any further question anybody wants to ask the doctor?

Judge Barnum: No.

Mr. Ambrose: No.

Court: You are excused, doctor."

The witness was then excused and the record discloses the following argument on the exclusion of the testimony of Dr. Bushong:

"Court: Mr. Prosecutor, before we turn to the next witness I took under advisement last night a motion by the defense with respect to the exclusion of Dr. Bushong's testimony. In connection with that, I received from the doctor a certain paper which he testified was sent to him by you, and I have had it marked 'State's Exhibit 5;' I overrule the motion of the defense with the usual exceptions, and I am making this document I referred to as 'State's exhibit 5' a part of the record but it is not an exhibit which will go to the jury. Concerning that again, I will also give you an exception.

Judge Barnum: Exception to incorporating it into the record?

Court: Yes.

Mr. Ambrose: Let the record show that it is incorporated in the record but not permitted to go to the jury.

Court: That is what I said.

Mr. Ambrose: For the simple reason it is solely and exclusively a matter of law with which the court alone has the right to deal.

Court: I asked for it and it is the basis of my ruling, it is not in for any other reason.

Mr. Hahn: The contents cannot be given to the jury?

Court: I have ruled it does not gò to the jury.

Mr. Hahn: I mean we will assume in argument it can be used?

Court: Not as such—there are certain facts in there—I don't perhaps get your point.

Mr. Hahn: Whether or not, for instance, I wanted to read it to the jury.

Court: No, because that would be something I feel would be equivalent to making it a regular exhibit. Do you request it to go to the jury? Is that the position of the defense?

Mr. Hahn: No. I just wanted to understand the court's position.

Court: I will do this:—if both sides agree I will certainly make it a regular exhibit.

Mr. Hahn: I will leave that to Judge Barnum.

Court: Mr. Hahn asked me whether he could read the contents to the jury in connection with his argument, as I understand it. I said 'no, not under the present ruling because I have considered it merely as something which has to do with my ruling on a question of law.' I did say, however, if both the defense and the prosecution so stipulate I should make it a regular exhibit.

Judge Barnum: Why am I brought into the question?

Court: Mr. Hahn brought you in, he said, 'I will leave it to Judge Barnum.'

Judge Barnum: With all due respects, he will have to make his own decision because he is senior counsel.

Court: The buck has been passed back to you. What is your attitude, Mr. Hahn?

Mr. Hahn: I will pass it back to the court and leave it entirely up to the court.

Mr. Ambrose: This is all in the record?

Court: Do you care to state your attitude?

Mr. Ambrose: I say the record in the shape it now is speaks for itself. They start with the proposition and half way—

Judge Barnum: I object to the statement.

Court: I don't think we need any argument. I am only asking you your idea whether it should be a regular exhibit or simply an exhibit for the purpose already stated?

Mr. Ambrose: It was used exclusively and only as an aid to Your Honor, in determining a question of law and not fact and with the law the jury has nothing to do.

Court: All right, then. I will abide by my ruling and exceptions are granted. You may call the next witness.

Mr. Ambrose: Now, let the record show this, so that there will be no misunderstanding, if they insist on it then I will withdraw any objection.

Court: They haven't insisted.

Mr. Ambrose: We don't want any pretended argument about it later.

Court: Let's not anticipate anything.

Judge. Barnum: I think counsel's statement is unfair. I don't know why in a court of today counsel cannot in good faith take any exception in. the record without comment being made of that kind.

Court: Ladies and gentleman, I have determined that this document we have been discussing is a matter concerning the court alone and please will you disregard the document insofar as you have heard something said about it and please absolutely disregard the colloquy between counsel and the court concerning it.. Will you please call the next witness?"

The court's overruling of the defendant's motion to take Dr. Bushong's testimony from the consideration of the jury was based upon two grounds:

(1) That all of the facts upon which the witness based his answer as to the sanity or insanity of defendant, were contained in the hypothetical question or were gained by his personal examination of the defendant; and

(2) Because the court found upon examining the letter and enclosures, that there were no facts stated therein that had not been presented to the witness in open court.

The defendant's contention that the opinion of an' expert witness cannot be predicated in whole or in part upon facts which are not a part of the record in the case is a correct statement of the law. But the court having concluded that the statements concerning the defendant contained in the

letter written by the prosecutor to the witness, were all presented to the witness in the hypothetical question, such finding left the defendant's contention without any foundation in fact and the court therefore properly overruled such motion. For the foregoing reason the defendant's first assignment of error is overruled.

It remains only to consider the defendant's claim that it was error to receive the prosecutor's letter, including the history of the case included therein, to Dr. Bushong, into evidence and not submit it to the jury. The record as above quoted, discloses that the court offered to submit the letter to the jury upon stipulation of the parties to that effect, but the defendant refused to agree to such stipulation. He can, therefore, not complain that he was prejudiced thereby.

The only purpose for presenting the letter to the court was so that the court could determine whether the statements in the letter were included in the hypothetical question presented to the witness in open court, as the basis upon which Dr. Bushong gave his opinion on the issue of the defendant's sanity. The facts contained in the hypothetical question were then before the court and Dr. Bushong having mentioned the letter in his testimony, it became a question of law for the court to determine as to whether all of the facts contained in the letter were presented to the witness as a part of the hypothetical question.

We find that the court did not commit prejudicial error in receiving the letter into evidence for that purpose and then withholding it from the consideration of the jury.

Upon the whole record the defendant had a fair trial and substantial justice has been done. Judgment affirmed.

HURD, PJ, MORGAN, J, concur.